## Sparkman, Chairman, et al. v. Saylor.

(Decided April 23, 1918.)

### Appeal from Leslie Circuit Court.

1. Elections—Corrupt Practices Act—Filing Statement of Expenditures—Time.—The provisions of sec. 4, Corrupt Practices Act, requiring statements of campaign expenditures to be filed fifteen days before and thirty days after an election, are directory as to the time in which they are to be filed, requiring a reasonable and substantial rather than a literal compliance; but otherwise they are mandatory.

2. Elections—Election Commissioners—Duties — Injunction. — The duties of election commissioners are purely ministerial, confined to a tabulation of votes and the issuance of certificates of nomi-

nation or election to candidates, shown by the returns to be successful, who have filed the required statements of expenditures; and, by mandatory injunction, they may be compelled to perform these duties.

3.  Elections—Mandatory Injunction to Issue Certificate—Parties—Interest.—An unsuccessful candidate can not, except in a contest filed in the time and manner prescribed by law, question the validity of an election on the ground of a violation of any of the provisions of the Corrupt Practices Act.

M. C. BEGLEY for appellants.

CLEON K. CALVERT for appellee.

Opinion of the Court by Judge Clarke—Affirming.

At the regular election, November 6, 1917, appellee M. S. Saylor and appellant, Z. R. Colwell, were candidates for the office of justice of the peace in magisterial district No. 3, Leslie county, appellee receiving 114 votes, and Colwell 69 votes.

Appellee filed with the proper officers a pre-election statement of his election expenditures, regular in form, but it was filed on the seventh instead of the fifteenth day before the election, as provided in the Corrupt Practices act, section 4, chapter 13, Acts 1916; and solely because of his failure to file this statement upon the date prescribed, the election commissioners refused to issue to him a certificate of election, whereupon he instituted this action against the election commissioners to procure a mandatory injunction requiring them to issue the certificate to him. Colwell filed a petition to be made a party in which he asked that the commissioners be required to issue the certificate of election to him.

It is agreed that Colwell filed his pre-election statement upon the fifteenth day before the election and that both candidates filed · post-election statements in conformity with the law. So, the only question presented is whether or not the provision found in section 4 that "Any person who shall be a candidate before any caucus or convention or at any primary election, or any final election . . . shall on the fifteenth day before the date for making such nomination and also on the fifteenth day before the final election file . . . a statement in writing, which statement shall be subscribed and sworn to by such candidate and which shall set forth in detail all sums of money, &c.," is mandatory or directory.

This question, among others, was before this court in the case of Kirk v. Sampson, 171 Ky. 315, wherein the judgment of the lower court was affirmed by an equally divided court, and, therefore, without a written opinion, but in that case the appellee had filed his statement before, but not on the fifteenth day before, the election, and it was, therefore, decided that the provisions as to the date upon which the pre-election statement is to be filed is directory and not mandatory, and to that extent we now unanimously approve that decision.

In this position, we are supported by a decided weight of authority, by the terms of the act itself when considered as a whole and its purposes as set forth in the title, and by reason.

The purposes of the act are thus clearly stated in its title: "An act to promote pure elections, primaries and conventions, and to prevent corrupt practice in the same; to limit the expenses of candidates; to prescribe the duties of candidates and providing *penalties* and *remedies* for violations, and declaring void, *under certain conditions,* elections in which these provisions or any of them have been violated;" which is conclusive, as is the act as a whole, of a legislative intent to insure fair and pure elections, free from corrupting influences, at which the voluntary choice of the majority or plurality of the qualified electors might be ascertained; and it, of course, was not the purpose of the act to defeat the free will of the majority or plurality after a fair election, free from corrupting influences, had been held; nor ought we to presume that the legislature, in prescribing rules intended to accomplish its purposes, meant to sacrifice substance for mere forms. Unquestionably the act is mandatory, in so far as it provides for the filing by all candidates of a true and accurate statement of expenses, covering every specified item, both before and after the election, because *until* he does so, the successful candidate can not get a certificate of election, qualify or receive the emoluments of his office. And the legislative intent therefore was doubtless twofold: First, that voters, from an inspection of the pre-election statement which was required to be open to public inspection, might understand the influences being exerted on behalf of the several candidates; and second, that an election might be annulled upon a contest under certain conditions which had been procured by corrupt practices, evidence

of which would be disclosed or indicated by one or the other or both of the required statements. And it is quite apparent that the pre-election statement, in so far as it is intended to enlighten the voter, is reduced in value in proportion to the time its filing precedes the election, so long as time is allowed in which to give publicity to its contents throughout the district for which the election is held; and that, in an election for an office such as is involved here, a statement filed on the fifteenth day before the election could be of no additional practical value whatever, either to the voter in determining how he should vote, or to avoid the consequences of corruption upon the part of a successful candidate by contest instituted thereafter, over a statement filed a less number of days before the election, because in a magisterial district election, corrupting influences would scarcely ever have been inaugurated that far in advance of the election, even where they were contemplated, and but a few days would suffice to give publicity to a statement throughout the district; while, in an election for a state office, such influences, if they are to be effective, might by that date have been manifested in part, at least, by such a statement, and a much longer time would be required for effective publicity than in a smaller district. Yet, the legislature made the same provisions as to time of filing the statements with reference to all candidates, whether running in the whole state or in the smallest sub-division thereof. So, it seems to us the provision as to the time for filing the pre-election statement can not be held to be mandatory upon any theory of the purposes intended to be accomplished thereby, and every reason exists for holding it directory merely in such respect if the terms of the act will permit, since, in the absence of corrupt practices, after a reasonable and substantial compliance with the provisions of the act by the candidate, no reason whatever exists for denying to him the fruits of such a victory, nor to the voters the officer of their choice; and we are extremely reluctant to do so upon doubtful or less than clear and unmistakable authority.

Before examining the terms of the act with reference to this question, we will quote a few authorities, which seem peculiarly applicable.

In 26 Am. & Eng. Encyc. of Law, 689, it is said:

"Statutory prescriptions in regard to time, form and mode of proceeding by public functionaries are generally directory, as they are not of the essence of the thing to be done, but are simply given with a view to secure system, uniformity and dispatch in the conduct of public business."

In Black on Interpretation of Laws, we find on page 336:

"It does not necessarily follow that because a statute is directly in some of its parts or provisions, or in some of its aspects, or as to some of the persons who are to act under it, it must be held directory throughout its whole extent. It is most frequently the case that some particular clause or provision of the act is construed as directory only, while the remainder is to be construed as imperative. The two classes of provisions may even co-exist in the same section or other division of the enactment. For example, when an act directs a certain officer to take certain action within a certain time, it may be directory as to the time of performance, but mandatory as to the doing of the act itself."

And on page 334:

"The form the question most commonly assumes is this: Some official act which the law provides for, and which constitutes one step to be followed by others in reaching a specified result, having failed to be taken, does the authority to proceed toward the intended result terminate when that particular step has been neglected, or may the proceedings go on to a conclusion, treating the neglect as immaterial? If the proceeding fails at that point, the requirement of the official act, which has been neglected is said to be mandatory; but if it may still proceed, the requirement is directory only; that is to say, the law directs that particular act to be performed, but does not imperatively command it as a condition precedent to anything further. This explains the difference between directory and mandatory provisions so far as concerns their effect on the rights of private persons and on the conduct of public business."

Section 227, McCreary on Elections, is as follows:

"But these rules are only means. The end is the freedom and purity of the election. To hold these rules all mandatory and essential to a valid election is to subordinate substance to form, the end to the means.

"If we keep in view these general principles, and bear in mind that irregularities are generally to be disregarded, unless the statute expressly declares that they shall be fatal to the election, or unless they are such in themselves as to change or render doubtful the result, we shall find no great difficulty in determining each case, as it arises under the various statutes of the several states."

In 36 Cyc. 1157, mandatory and directory statutes are thus defined:

"A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Whether a particular statute is mandatory or directory does not depend upon its form, but upon the intention of the legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would re-result from construing it one way or the other."

While the section of the statute now before us provides that the pre-election statement *shall* be filed on the fifteenth day before the election, and while it is a general rule of construction that when used in a statute, "the words 'shall' and 'must' are imperative, operating to impose a duty which may be enforced," (36 Cyc. 1160), it is apparent from the authorities cited above that there are many exceptions to this general rule, depending upon the intention of the legislature to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other. In our judgment, upon such consideration of the statute, the word *shall*, as here used, is mandatory as to filing of the statement, but directory only as to the time when it shall be filed.

The only other sections of the statute which refer to or can elucidate the provision under consideration are 7, 8, 9 and 11. Section 7 provides that no officer or board authorized to issue certificates of election or nomination shall issue same to any person "until the statements required by this act shall have been made and filed as required." Section 8 imposes a penalty not to exceed $500.00, recoverable by indictment or penal action, upon any person failing to file the required statement or

statements. Section 9 provides that no person shall be permitted to qualify as an elective officer until he shall have filed the statements as provided by the act, and no officer shall receive any salary or emoluments for any period prior to the filing of such statements.

The use of the word *until* in sections 7 and 9, in stating some of the consequences of a failure to file the statements required, is indicative of a right to avoid the consequences of a failure to file upon the particular date; and the provision of section 9 that no officer shall receive any salary or emoluments for any period prior to the filing of such statements is persuasive that such officer would be entitled to receive his salary after he had filed the post election statement, even though he had not filed it within the time required, because this statement is required to be filed within thirty days after an election held on Tuesday after the first Monday in November, but the officer cannot qualify or be entitled to salary until January following, which is some time after the expiration of the thirty days allowed for the post-election statement to be filed. So, it would seem clear that, with reference to the post-election statement at least, the person elected may neither qualify nor receive any salary until he has filed such statement, and his failure to file the same within the time prescribed does not render the election void nor defeat his right to a certificate of election, etc., although the statute employs the word *shall* in reference to the time within which this statement is to be filed, just as it does with reference to the time for filing the pre-election statement. See Com. v. Schrotnick, 240 Pa. St. 57; 87 Atl. 280; Ann. Cas. 1915A 365.

Section 11 contains the only provision in the act for declaring an election void, and it provides that: *"In any contest* over the nomination or election of any officer mentioned in this act, it may be alleged in the pleadings that the provisions of this act have been violated by the candidate or by others in his behalf with his knowledge, and if it so appears upon the trial *of said contest,* then said nomination or election shall be declared void."

An election contest is a distinct and peculiar proceeding, required to be filed in the time and manner prescribed by law. This action is not such a proceeding, as between the plaintiff and the election commissioners, and the duties of the election commissioners are purely

ministerial, confined to a tabulation of the vote and to the issuance of a certificate of election or nomination to the successful candidate upon the face of the returns, who has theretofore filed his pre-election and post-election statements required by the act; and these ministerial duties they may be compelled to perform by mandatory injunction after such statements have been filed. Ward v. Howard, 177 Ky. 38; Lay v. Rose, 177 Ky. 303; Hayes, et. al, v. Combs, 177 Ky. 355. The election commissioners have no judicial discretion, and hence no authority to construe the act or determine the validity of the election, but must issue to the successful candidate, determined by a tabulation of the returns, a certificate of election, not, however, *until* he has filed the statements required by the Corrupt Practices Act.

In holding that the statute is mandatory in requiring a candidate to file a pre-election and post-election statement of expenditures and is directory merely as to the time when such statements must be filed, we do not mean that a candidate must not reasonably and substantially comply with the provisions of the act as to the time of filing his pre-election and post-election statements, for this he must do, and his failure so to do will be a ground for contest; and in a contest where a failure to reasonably and substantially conform to this, or any, requirement of the act is made a ground of contest, the question will be determined upon the circumstances of each particular case, for it is manifest that what would be a reasonable and substantial compliance with the provision in one case might not be so in another; but, having decided that the act is mandatory only in requiring that a statement in proper form must be filed before the election, and directory merely as to the time, it follows that where a proper pre-election statement has been filed the election is not void, unless the time at which the statement was filed was not a reasonable and substantial compliance with the law, and the burden is upon the contestant to plead and prove such a failure. In other words, the election is *prima facie* valid and not void where the candidate who receives the highest number of votes has complied with the mandatory provisions of the act.

So that, even if we consider appellant Colwell's intervening petition as a contest, it was incumbent upon him to plead facts showing that appellee had failed rea-

sonably and substantially to comply with the requirement to file a pre-election statement, and we do not consider, in an election confined to a single magisterial district, the simple allegation that the pre-election statement was filed by appellee upon the seventh rather than the fifteenth day before the election, sufficient for the purpose, since apparently and presumably in such an election a filing of the statement on the seventh day before the election would serve every imaginable purpose as fully and as completely as if filed upon an earlier date and was, therefore, a reasonable and substantial compliance with the directory provision of the law.

It, therefore, results that the court did not err in sustaining demurrers to the intervening petition of Colwell and to the answer of the election commissioners, and that appellee was entitled to the mandatory injunction requiring the election commissioners to issue to him a certificate of election. Therefore, whether or not upon a contest wherein the election of the candidate who received the highest number of votes is declared void, a candidate who received a less number of votes could be awarded the office, even though it is so provided in section eleven of the Corrupt Practices Act, is a question we need not now decide and about which we express no opinion.

Wherefore, the whole court sitting, the judgment is affirmed.