**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**J. J. JORDAN, Appellee.**

**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**Stephen E. GILMORE, Appellee.**

**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**John R. OLIVERIO, Appellee.**

**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**Aubrey WILLIAMS, Appellee.**

**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**Michael E. KEPLINGER, Appellee.**

**KENTUCKY REGISTRY OF ELECTION FINANCE, Appellant,**

v.

**Ellen B. EWING, Appellee.**

Court of Appeals of Kentucky.

June 8, 1979.

Allen Prewitt, Jr., Frankfort, for appellant.

Grover D. Adkins, Louisa, for appellee, J. J. Jordan.

Donald L. Frailie, II, Ashland, for appellee, Stephen E. Gilmore.

Kenneth Williams, Jr., Gray, Woods & Cooper, Ashland, for appellee, John R. Oliverio.

Robert P. Benson, Jr., Louisville, Thomas L. Hogan, Louisville, for appellee, Aubrey Williams.

W. E. Quisenberry, Jr., Quisenberry & Quisenberry, Calhoun, for appellee, Michael E. Keplinger.

James C. Hickey, Ewen, Mackenzie & Peden, P. S. C., Louisville, for appellee, Ellen B. Ewing.

Before GANT, LESTER and VANCE, JJ.

LESTER, Judge.

These consolidated cases involve appeals by the Kentucky Registry of Election Finance from the adverse granting of summary judgment, with the central issue being the late filing of financial reports pursuant to the provisions of the Corrupt Practices Act.

Five of the cases found their origin in the failure to promptly comply with KRS 121.180(2)(a)(3), which calls for a 30-day post-primary report, and one concerns the late filing of the 12-day preprimary report required by KRS 121.180(2)(a)(2). The basis for all of the summary judgments was a finding by the respective circuit court that each candidate had substantially complied with the Corrupt Practices Act. That conclusion came from the courts' belief that even though the requirement that the reports be filed was mandatory, the filing deadline provisions were directory.

At the outset, we wish to point out that there is not even the slightest indication that any of the appellees had committed any "corrupt practices," for even the appellant is candid when it says "certainly we do not contend that the tardy filings involved here constitute moral turpitude . . ."

### J. J. JORDAN

This appellee was the successful Democratic candidate for County Judge/Executive in the Lawrence County Primary held May 24, 1977. The county board of elections certified Judge Jordan's election, but appellant Registry did not, and appellee brought this action for a determination that he substantially complied with KRS Chapter 121, commonly known as the "Corrupt Practices Act," even though his 12-day preprimary report was not received by the appellant until three days after the nominating election. The Registry took the position that Jordan's election was void because under no circumstances could he be relieved of the requirements of KRS 121.180(2)(a)(2).

The trial court detailed the facts of the case and we quote its resume:

In accordance with its expressed view, the Registry presented no evidence at the hearing. Plaintiff testified at length, frankly admitting his failure to strictly comply with the statute. Plaintiff did, however, offer in mitigation the fact that his wife of forty-five years became seriously ill approximately two and one-half weeks before the May 24, 1977, primary and that she underwent major surgery and remained in intensive care until after the primary election. Plaintiff testified that he remained at her bedside almost constantly from her admission to the hospital at Huntington, West Virginia. She was, on the date of the hearing some three months later, still confined to a hospital bed. Plaintiff testified that he had received a letter from the Registry postmarked May 23, 1977, one day before the election, reminding him that his "12 day pre-primary report" had not been received, but that he did not receive such communication until May 25, 1977. Plaintiff stated that he for the first time, realized that due to the illness of his wife, he had neglected to file the "12 day pre-primary report". Plaintiff then phoned the Registry and was told by the Executive Director that the circumstances seemed reasonable, but that the Registry could not receive his report until the Commonwealth's Attorney certified by letter that no willful violation of KRS Chapter 121 had occurred. Plaintiff then contacted the Commonwealth's Attorney who so certified. Plaintiff then mailed his report, which was received and filed by the Registry on May 27, 1977, three days after the primary. A few days later, Plaintiff discovered by reading a front page story in the "Huntington Herald-Dispatch" newspaper that the Registry sought to withhold his certificate of election and to void his election. Other than the May 24, 1977, form letter, the Registry has not communicated with Plaintiff directly at all. Counsel for the Registry frankly admits that the Registry cannot in good faith justify criminal proceedings against Plaintiff under KRS 121.990.

The Lawrence Circuit Court concluded:

The salutary purposes of the Act were not affected. But are the Plaintiff's reasons for failure sufficient to avoid forfeiture of his election? This Court is of the opinion they are. A man does not lightly toss aside his wife and constant companion of forty-five years. When she is at death's door, his presence and thoughts will not be elsewhere, but at her side. It is entirely reasonable and perhaps even proper that he will forget, over-look, and neglect matters of far more importance than the report involved herein. That is one of the highest attributes of human nature. The Legislature cannot change it. This Court does not believe that it is [the] intent of the Legislature to punish it or defeat the will of the more than seventeen hundred voters who expressed their confidence in Plaintiff.

On the basis of the facts in this case, the Court is of the opinion that Plaintiff, J. J. Jordan, has substantially complied with the mandate of the Corrupt Practices Act.

## JOHN R. OLIVERIO AND STEPHEN E. GILMORE

Appellees, Oliverio and Gilmore, were both candidates for the nonpartisan nomination to the office of city commissioner of the City of Ashland. Each man had duly designated a campaign treasurer.

After the May 24, 1977 primary and prior to June 28, 1977, the deadline for filing a final report, Oliverio inquired of his treasurer if all reports had been completed and filed and he was assured that they had been. However, by letter dated July 8, 1977, and received prior to July 11, 1977, the appellant notified Oliverio that the 30-day post-primary report had not been filed, and on this last mentioned date, the treasurer completed the document and it was in the Registry's offices three days later. What had occurred was that after May 24, 1977, the treasurer had been out of the city on business for a period of time and had failed to realize that the report had not been filed

until the candidate notified her of the appellant's letter.

Appellant's executive director wrote to the Boyd County Commonwealth's Attorney to the effect:

Should you conclude that the violation was not willful and that prosecution is not warranted, and if the reports are submitted promptly, the Registry will accept such reports as in substantial compliance. If you conclude otherwise the Registry will cooperate in any action you deem appropriate.

The prosecutor replied that he had concluded that Oliverio had not willfully violated KRS 121.180 and that legal action was not warranted. On July 20, 1977, the appellant's executive director again wrote to the Commonwealth's attorney stating:

Re: John R. Oliverio-Candidate
Ashland City Commission

Dear Mr. Williams:

The above named candidate has now filed his 30 day post-primary report. It was received on July 14, 1977. In view of your conclusion that there was no willful intent to evade the law, the Registry will accept the report as in substantial compliance.

Prior to the primary, Stephen Gilmore's treasurer notified him that business would require him to be absent from Ashland on the day of the nominating election but that with a few minor entries, the final report was completed and would be filed. On July 10, 1977, the treasurer completed the statement not realizing the deadline for filing had passed. Meanwhile, Gilmore had left on vacation, and upon his return he found a letter from the Registry informing him the report was late. The document was filed July 19, 1977, and on the following day, the executive director of the Registry wrote the Commonwealth's attorney as follows:

Re: Stephen E. Gilmore-Candidate
Ashland City Commission

The above named candidate has now filed his 30 day post-primary report. It was received on July 19, 1977. In view of our conclusion that there was no willful intent to evade the law, the Registry will accept the report as in substantial compliance.

The Boyd Circuit Court made a thorough examination of all the applicable statutes, and after observing that after a candidate designates a treasurer, all report forms thereafter are furnished by appellant to that official and not the candidate, wrote:

The Registry takes the position that the failure of the designated treasurer to file the required report, even though such failure be unknown to the Candidate is, by virtue of KRS 121.990(10) a violation of KRS 121.180, and voids the nomination of the Candidate. The Registry argues that the Candidate is responsible for the failure of the treasurer to file the required report, relying upon the wording of KRS 121.180(2)(a)(4), and ignoring KRS 121.990(10).

To determine the soundness of the Registry's position we must examine all of present Chapter 121.

First, KRS 121.160 *requires* each Candidate to designate a campaign treasurer at the time he files as a Candidate, upon a duplicate form prescribed and furnished by the Registry, *and until he does so he shall be listed as his own treasurer and accountable as such.* The phrase "accountable as such" is significant . .

The Candidate may appoint himself as treasurer in which [case] he is accountable as such, or he may appoint any registered voter in Kentucky as his treasurer.

As a result, the Statute authorizes:

1. A Candidate who is his own treasurer, (one person)

or

2. A Candidate *and* a treasurer, (two persons).

Turning to KRS 121.180(2) we find that *it is the mandatory duty of the campaign treasurer of a Candidate,* or a campaign committee, to make full reports upon a prescribed form, to the Registry, of all money, loans or other things of value, received by him from any source since the

date of the last report, including the name, address and occupation of each person or group in excess of $100.00, the amount contributed by each and the date of the contribution with a complete statement of all expenses. KRS 121.180(2) sets forth when the reports are to be made and provides a grace period of five, (5), days from each filing deadline.

Prior to 1966 *it was the obligation of the Candidate* to file statements of receipts and expenditures and accompany the same with a prescribed oath, (old KRS 123.060). HOWEVER, NOW IT IS THE OBLIGATION OF THE CAMPAIGN TREASURER.

I believe that a correct construction of KRS 121.180(2)(a) would be that such refers to the filing of the reports by the campaign treasurer. It is he who has the information *and it is he who must file the reports.*

If the Candidate is also his own treasurer, we have no problem, KRS 121.990(10). If the treasurer is not the Candidate, but the Candidate knows that the Treasurer if failing, or has failed, to file the required reports and takes no action to get them filed, we have no problem. KRS 121.990(10).

To sustain the position of the Registry a successful Candidate could be deprived of his nomination by the unknown act, or failure to act, intentional or unintentional, of the treasurer to file the required report, and even though such treasurer may have represented to the candidate that he had filed such report. Certainly the Legislature has the power to enact legislation to penalize a candidate for the unknown default of the treasurer. In my opinion the present law does not, and is not intended to so do, unless the Candidate, after ascertaining the failure of the treasurer to file the report, fails to promptly take steps to see that such report is made. If the Candidate does promptly take steps to see that the report is made and a report made within a reasonable time, then substantial compliance has been accomplished and certainly this is the opinion of the Executive Director

of the Registry as heretofore indicated by written letter.

Although KRS 121.120(1) authorizes the appellant to appoint a full-time executive director, it does not spell out his duties and powers, but we find it somewhat incongruous that the director can take the position that these two appellees were in substantial compliance with the law and then the registry can seek to void their nominations.

The sound reasoning of Judge Fanning is such that we would find it difficult to disagree therewith and we therefore, affirm his opinion.

## AUBREY WILLIAMS

This appellee was a successful candidate for representative to the General Assembly from the 42nd Legislative District. He had designated a treasurer who had filed two preprimary financial reports as well as the postprimary statement, but did so some twenty days late. On June 17, 1977, Williams gave his treasurer, one Hancy Jones, the necessary information for the final report and Jones marked his calendar to complete and file it on June 24, 1977. However, two days prior to the 24th Jones lost his job causing great anxiety and frustration which caused him to forget his treasurer's duties. Williams was unaware of Jones' oversight until he and his family returned from a trip on July 13, 1977, at which time he received the late filing note from appellant. Jones filed the statement the next day.

Without further elaboration, we believe the basic principles enunciated by the Boyd Circuit Court in the Oliverio and Gilmore litigation are equally applicable to the Williams case because we have designated treasurers who shoulder the reporting responsibilities, rather than the candidates. We, therefore, affirm the Jefferson Circuit Court, but for the reasons set forth in Judge Fanning's opinion.

## MICHAEL E. KEPLINGER

Perhaps the most resourceful of all the appellees was Michael Keplinger, an unop-

posed candidate for the Democratic nomination for sheriff of McLean County. Keplinger was his own treasurer, but he had no receipts or expenditures. Although it is unclear from the record, it was probably for that reason that he felt it was unnecessary for him to file a report. Upon notification by appellant, appellee forwarded the appropriate forms on July 15, 1977, and by letter dated July 20, 1977, from the Registry's executive director to the Commonwealth Attorney for the 45th judicial district, the appellant said in part "the Registry will accept the report as substantial compliance." Again, we wonder why this case was filed.

Not wanting to leave anything to chance, the McLean County Democratic Party Executive Committee, being aware of their candidate's potential plight, met on August 15, 1977, and nominated and elected Keplinger as the one to fill the vacancy in the sheriff's race if one did in fact become a reality by virtue of this litigation. Needless to say, Michael Keplinger was elected sheriff the following November.

In the lower court, appellee answered the complaint by pleading the vagueness of appellant's regulations with reference to a candidate having no receipts or expenditures; that the Registry was estopped from bringing the action because its own rules and regulations contributed to his failure to comply with the law; that the cause is moot by virtue of the action of the Democratic Executive Committee; and that he was in substantial compliance with the law. The trial court rendered judgment for appellee based upon his last enumerated defense.

### ELLEN B. EWING

Appellee Ellen Ewing was a candidate for District Judge, 30th Judicial District, 9th Division, and acted as her own treasurer. Judge Ewing forgot to file her final report on June 28, 1977, and it was not until the 20th of July while on vacation in Florida that she became aware of her omission when a relative telephoned and told her of a newspaper article listing her as delinquent. She immediately completed the report and mailed it to appellant.

Even though appellee presented several defenses, the court below, in granting her judgment, found her to be in substantial compliance and in so doing, noted that albeit the appellant took the position that the statutory filing timetable was mandatory, nevertheless, it arbitrarily chose to extend the postprimary deadline to July 7, 1977, for other candidates.

In the majority of these appeals, the appellant received letters from the local Commonwealth Attorney advising that the alleged violations were not willful and prosecution was not warranted. In several situations, the appellant went on record by replying to either the state's representative or the candidate that it would treat the nominees as being in substantial conformity with the law, yet it violated its own delineations and refused to certify the elections. In two other cases, without the knowledge of the candidate as to the omission, the treasurer and not the office-seeker failed to timely file the required reports. In the Ewing situation, the Registry extended the postprimary filing deadline to other similarly situated candidates, but not to her.

We take the view that in these particular cases, the appellants either accepted the substantial compliance theory; sought to void a candidate's election for an act attributable to another; or treated like candidates in a dissimilar fashion. We hasten to point out that in the appeals involving the treasurers' dereliction of duty, if there had been any evidence that the candidates were aware of the failure to comply with the Act on the part of his financial officer, then we would reach a different conclusion. In other words, lack of knowledge is the key in two of these cases.

Since we consider this the first major test by the Registry to bring some semblance of order to our election process, as well as to make an effort to restore the faith of the people in the election process, we will affirm the judgments in each of these cases for the reasons assigned herein, but insofar as future litigation is concerned, we deem an opposite result to be appropriate.

A Corrupt Practices Act is nothing new to the law of this jurisdiction for its first enactment was by the 1916 General Assembly and was codified as §§ 1565b–1 through 1565b–21. This early statute contained provisions for the filing of pre-election reports of receipts and expenditures (§ 1565b–4) as well as those for postelection (§ 1565b–6). Moreover, if a candidate violated any of the several provisions of the act, his nomination or election could be voided (§ 1565b–11).

The earliest case of any significance was *Sparkman v. Saylor,* 180 Ky. 263, 202 S.W. 649 (1918), which was relied upon by all appellees herein for their position that the statute is mandatory in requiring a candidate to file a pre-election and postelection statement of expenditures, but is merely directory as to the time when such statements must be filed. However, the current statutes are significantly different from those in effect at the time *Sparkman* was decided.

The early statutes, which required the filing of the statements at designated times, did not provide that the election or nomination of the candidate shall be void upon failure of the candidate to comply with the filing requirements. Kentucky Statutes 1565b–7 and 1565b–9 provided the penalty for failure to file the statements. The penalty was that no person could be issued a certificate of election nor be permitted to qualify for the office until the statements had been filed.

Before the 1972 amendments, KRS 123.-090 provided as follows:

Failure to file statements; effect of. No officer or board authorized to issue certificates of nomination or election shall issue a certificate of nomination to any person until he has filed the statements required by KRS 123.060, nor a certificate of election to any person until he has filed the statements required by KRS 123.070. Neither the Secretary of State nor the county clerk shall certify the name of any candidate to be placed on the ballot in the regular election until the statements required by KRS 123.060 have been filed. No person shall be permitted

to qualify as an elective officer until he has filed the statements required by KRS 123.060 and 123.070, and no officer shall receive any salary or emolument for any period prior to filing the statements.

If a candidate who failed to file the statements on time could not take office until he filed them, it seems to follow naturally that he could take office upon compliance, and therefore the intent of the legislature was not to void the election, but only to require compliance.

In contrast with the old statutes, the new Corrupt Practice Act, KRS 121.990(10) provides:

The nomination for, or election to, an officer of any candidate who violates any provision of KRS 121.100 to 121.200 . . shall be void, and the office or candidacy shall be filled as provided by law for the filling of a vacancy.

The only provision for voiding the election in the early statutes was found in a section dealing with election contests. It provided that any party contesting an election could plead that the contestee had violated the provisions of the Corrupt Practice Act, and if such allegations were proved, the election should be declared void, providing the contestant had not himself violated the Act. These provisions are substantially carried over into KRS 120.015.

Under these statutes an election could be voided only at the instance of a defeated candidate in a contest, and not even then if the defeated candidate had also violated the Act. The incentive for a defeated candidate to bring a contest action was considerably lessened by the decision in *McKinney v. Barker,* 180 Ky. 526, 203 S.W. 303 (1918). Many abuses of the Corrupt Practice Act will not be challenged in an election contest, and therefore such abuses would not result in voiding the election under the statutes as they existed prior to 1972.

Under the present statutes a Registry of Election Finance is created to be a watchdog, over election practices, the reports are required to be filed with the Registry, and the Registry, as well as any candidate for the office or any qualified voter, can bring

an action to declare a vacancy. It is not left to the choice of a defeated candidate alone to determine whether a penalty shall be exacted for failure to comply with the statute.

The penalty provision of the present Corrupt Practice Act clearly states that an election is void if the Act is violated by the successful candidate. The old statute merely withheld the right to take office until the reports had been filed. Because of this significant difference in the two statutes, we do not believe *Sparkman, supra,* is controlling or even applicable.

We will interpret the Act as it is written. Shall is a word which is generally given a mandatory interpretation. The Act says an election *shall* be void if the Act is violated. We would so hold.

The judgments below are affirmed.

All concur.