**Albert DEMPSEY, Appellant,**

v.

**Thelma STOVALL, Secretary of State of Commonwealth of Kentucky, Fred Wolchik, James Muncy, County Court Clerk of Martin County, Roy R. Ross, County Court Clerk of Johnson County, Appellees.**

Court of Appeals of Kentucky.

Sept. 15, 1967.

Sam G. McNamara, Frankfort, for appellant.

Jack L. Lewis, Paintsville, for appellee Wolchik.

Robert Matthews, Atty. Gen., for appellee.

Walter C. Herdman, Asst. Atty. Gen., Frankfort, for appellee Stovall.

DAVIS, Commissioner.

Albert Dempsey, the appellant herein, a qualified voter of the 97th Legislative District composed of Johnson and Martin Counties, instituted this action in the Franklin Circuit Court asserting that appellee, Fred Wolchik, failed to comply with pertinent provisions of KRS Chapter 123. Dempsey alleged that Wolchik had received a majority of the votes cast in the Republican Primary held May 23, 1967, in the contest for representative in the 97th Legislative District of Kentucky, and demanded that the Secretary of State and the county court clerks be enjoined from taking the administrative steps looking toward placing the name of Wolchik on the ballot to be used in the general election to be held November 7, 1967, in the legislative district.

The trial court denied the relief sought and dismissed the complaint, and Dempsey prosecutes this appeal testing the propriety of that judgment.

KRS Chapter 123 was enacted as Senate Bill No. 265 in the General Assembly of 1966 and became effective June 16, 1966. The legislation referred to substantially supplanted the Corrupt Practices Act which had previously been embodied in KRS Chapter 123.

KRS 123.071(1) provides:

"Each candidate in an election shall appoint one campaign treasurer and shall designate a campaign depository on or before the date of public announcement of his candidacy or on the date he files as a candidate, whichever is sooner. The candidate may appoint himself or any other registered voter in Kentucky as his campaign treasurer and may designate any bank authorized by law to transact business in Kentucky as his campaign depository. The candidate shall file the name and address of the campaign treasurer and the campaign depository with the Registry, and his qualification shall not be complete until he has met this requirement."

KRS 123.086 directs the filing of reports to the Kentucky Registry of Election Finance (hereinafter Registry).

KRS 123.991 is as follows:

"(1) Any person who violates a provision of this act is guilty of a misdemeanor and shall be punishable by a fine not exceeding $1,000 or by imprisonment for not more than one year, or both. Violations shall include but shall not be limited to any of the following acts or omissions;

(a) Failure to make required reports or to file reports at times specified;

(b) Making any false statement or report;

(c) Giving money under a fictitious name;

(d) Making any communication to support or defeat a candidate without identification of sponsorship.

(2) The nomination for, or election to, an office of any candidate who violates any provision of this act, or whose campaign treasurer or any deputy campaign treasurer violates a provision of this act with such candidate's knowledge, shall be void, and the office or candidacy shall be filled as provided by law for the filling of a vacancy.

(3) Promptly after the final date for filing statements and reports the Registry shall notify all persons who have become delinquent in filing the same, including contributors, and shall make available a list of such delinquents for public inspection. The registry shall also report to the Attorney General and the Commonwealth attorneys such list.

(4) Any registered voter may sue for injunctive relief to compel compliance with the provisions of this act.

(5) Prosecution for violation of any provision of this act shall not be commenced after one year has elapsed from the date of the violation."

In his answer, Fred Wolchik, the successful candidate in the Primary, admitted:

" * * * that he did not appoint or designate his campaign depository until May 31, 1967, or file any financial reports required by Chapter 123.086 (sic) until May 24, 1967, and that the same were deposited in the United States mail late on May 22, 1967, and that it is probably true that the postmark thereon reflects the date of May 23, 1967."

An affidavit of Kenneth P. Vinsel, Executive Director of the Kentucky Registry of Election Finance, disclosed that three written communications were directed to appellee Wolchik from the Registry apprising him of the requirements of KRS Chapter 123, but that no reply was received by the Registry until May 24, 1967, in an envelope postmarked at Paintsville on May 23, 1967. The affidavit of Mr. Vinsel reflects that the name of the depository was not furnished to the Registry until June 1, 1967, in an envelope postmarked May 31, 1967. On June 5, 1967, the Registry received two reports of contributions and expenditures dated June 2, 1967.

The appellant asserts that the provisions of KRS Chapter 123 requiring the appointment of a campaign treasurer and designation of a campaign depository are mandatory. It is also contended that the financial reports prescribed by KRS 123.086 are mandatorily required and that Wolchik's nomination is void for his failure to comply with the requirements of the act in these respects.

The appellee Wolchik contends, and was upheld in his contentions by the trial court, that the interests and rights sought to be served and protected by KRS Chapter 123 are those of the voters and the general public of the district, and that absent a showing that non-compliance or dilatory compliance injured or denied such protection to the public, it cannot be said that Wolchik is disqualified from the nomination which a ma-

jority of the voters conferred upon him. Moreover, it is contended by appellee Wolchik and was found by the trial court that there was substantial compliance with the provisions of the act.

It is to be observed that appellee Stovall, Secretary of State for the Commonwealth of Kentucky, filed answer herein in which the court was requested to decide the issue prior to the deadline for certifying the names and addresses of the duly nominated candidates. The county court clerks of Johnson and Martin Counties have not filed any pleadings in this proceeding.

The litigants point out that there has been no decision of this court construing present KRS Chapter 123. The appellant and appellee Wolchik direct our attention to prior decisions of this court construing provisions of KRS Chapter 123 as they existed prior to the 1966 legislation. These decisions are: Sparkman v. Saylor, 180 Ky. 263, 202 S.W. 649; Best v. Sidebottom, 270 Ky. 423, 109 S.W.2d 826; Raney v. Stovall, Ky., 361 S.W.2d 518; Breathitt v. Warren County Election Commission, Ky., 372 S.W.2d 793; Board of Trustees of Demossville Graded Common School District v. Board of Education of Kenton County, 193 Ky. 502, 236 S.W. 1038; Raymer v. Willis, 240 Ky. 634, 42 S.W.2d 918; Monhollan v. Rice, 287 Ky. 814, 155 S.W.2d 223. In addition to the domestic cases cited, appellee invites our attention to United Fuel Gas Company v. Railroad Commission, 278 U.S. 300, 49 S.Ct. 150, 73 L.Ed. 390.

█ Without undertaking an analysis of each of the authorities cited and numerous others which have emanated from this court incident to litigation involving prior legislation, it suffices to say that the filing of financial reports as required by the Corrupt Practices Act is a mandatory requirement. We need not now decide whether a substantial compliance vis-a-vis strict compliance satisfies the mandate of the act. It is patent that failure to file reports and designations required by the act until after the date of the Primary cannot be deemed compliance, substantial or strict. In this state of case, it would be to emasculate the salutary provisions of the act to permit appellee Wolchik to receive the benefits of the nomination obtained in flagrant violation of the law's clear provisions.

We are not to be understood as here holding that the appellant Dempsey has sufficient standing in court to obtain the redress ordered in this appeal. We reserve that question without adjudication. It is significant that the terms of KRS 123.071(1) made appellee Wolchik unqualified for the office by his failure to comply with its terms.

█ In view of the public question involved, and in view of the fact that a public official, here the Secretary of State, seeks judicial determination of her duties in the premises, we are constrained to hold that the nomination of Wolchik in the circumstances presented by this record is a void nomination under the clear provisions of KRS 123.991. Accordingly, the Secretary of State will not certify appellee Fred Wolchik as the Republican nominee for House of Representatives from the 97th Legislative District of Kentucky, and the appellees, James Muncy, county court clerk of Martin County, and Roy R. Ross, county court clerk of Johnson County, will not place the name of Wolchik on the ballot for the November 7, 1967, election based upon the nomination of Wolchik in the Primary held May 23, 1967. The candidacy for such office shall be filled as provided by law for the filling of a vacancy.

The judgment is reversed with directions to enter a new judgment in conformity with the opinion.

WILLIAMS, C. J., and OSBORNE, STEINFELD, MILLIKEN and EDWARD P. HILL, JJ., concur.

MONTGOMERY, J., dissents.

PALMORE, J., not sitting.

### DISSENTING OPINION

MONTGOMERY, Judge.

I respectfully dissent from the majority opinion primarily because Albert Dempsey, who seeks injunctive relief, has failed to show any irreparable injury. It is elementary law that such a showing must be made to entitle one to such relief.

The basis of my dissent is expressed in a unanimous opinion in Breathitt v. Warrenty Election Commission, Ky., 372 S.W. 2d 793. The plaintiffs therein sought injunctive relief for a violation of an election statute.

After pointing out that those who sought relief had failed to allege or prove that the act done "will in any way adversely affect or injure them either as candidates or as citizens and taxpayers", the court said:

"* * * unless the plaintiffs show some damage different in character from that which may be sustained by the public generally, they have not established a right to relief. 28 Am.Jur., Injunctions, section 178 (page 681).

"It is axiomatic that an injunction will not lie unless the defendant is doing or threatening an act which will be injurious to the one seeking the injunctive relief. Board of Trustees of Demossville Graded Common School Dist. v. Board of Education, 193 Ky. 502, 236 S.W. 1038. As said by the Supreme Court of the United States in United Fuel Gas Co. v. Railroad Comm., 278 U.S. 300, 310, 49 S.Ct. 150, 152, 73 L.Ed. 390:

" 'Suitors may not resort to a court of equity to restrain a threatened act merely because it is illegal or transcends constitutional powers. They must show that the act complained of will inflict upon them some irreparable injury.'

"To the same effect is Morrow v. City of Louisville, Ky., 249 S.W.2d 721. The fact that public acts or officials are involved does not change the rule. See Hettel v. Furste, 260 Ky. 844, 86 S.W.2d 1018; Little v. Bogie, 300 Ky. 668, 190 S.W.2d 26."

This was the law decided in 1963. The majority opinion does not satisfactorily say why it should not be law of this case. Likewise, the majority opinion does not overrule or distinguish the cases listed therein which established a rule of long standing that the filing of such reports is discretionary as to time of such filing and that a substantial compliance in reporting is sufficient. See also Sparkman v. Saylor, 180 Ky. 263, 202 S.W. 649; Creech v. Fields, 276 Ky. 359, 124 S.W.2d 503.

The effect of the decision by the majority is to thwart the will of the majority of the voters in the Republican Primary in Johnson and Martin Counties at the instance of his defeated opponent. The fact that the seeker of the relief is the defeated incumbent is a proper subject of judicial notice. No other citizen of the two counties complains.

I do not feel that the appellant has sufficient standing to "obtain the redress ordered in this appeal," to borrow a term from the majority opinion. By express language the majority opinion refrained from holding that he does have such standing. Such being the case, the majority of the court is in the position of rendering a favorable decision for one it is unwilling to say has a right in court. Accordingly, I do not feel that the appellant is entitled to receive the extraordinary relief granted by a court of equity when no one is willing to say that he is entitled to seek or obtain equity.

For these reasons I dissent.