James H. NOBLE, Movant/Appellant,

v.

Virginia MEAGHER; Hon. Ray Corns, Judge, Franklin Circuit Court; Drexell R. Davis, Secretary of State; Margaret McPherson, Clerk, Breathitt County; Anna M. Baker, Clerk, Powell County; S. Kenneth Lindon, Clerk, Wolfe County, Respondents/Appellees.

Supreme Court of Kentucky.

Feb. 28, 1985.

Lester H. Burns, Jr., Burnside, for movant.

Michael R. Moloney, Margaret H. Kannensohn, Lexington, for Virginia Meagher.

Michael A. Stidham, Jackson, for Breathitt County Clerk.

Ann Z. Stewart, Frankfort, for Drexell Davis.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed the judgment of the circuit court holding that candidate Noble did not meet the required residency qualifications for the position of district judge in the Thirty-ninth Judicial District composed of Breathitt, Powell and Wolfe counties.

The critical issue is whether KRS 118.176 applies to non-partisan judicial races and whether the suit challenging the residency qualifications of Noble was brought in the right court.

Three candidates were entered in the primary election of May 29, 1984, in the Thirty-ninth Judicial District for judge. Noble received 52 percent of the vote, Meagher, the incumbent, received 28 percent, and William P. Bach received the balance. Both Noble and Meagher were certified for nomination and their names were printed on the ballot for the November election.

On October 4, 1984, only 32 days from the scheduled general election on November 6, Meagher filed a complaint in the Franklin Circuit Court alleging that Noble was not eligible to be a candidate for district judge because he did not possess the required residency qualifications pursuant to Section 122 of the Kentucky Constitution. After a hearing of evidence, the circuit court on October 15, found that Noble was not a resident of the district and ordered the Secretary of State to strike his name from the judicial ballot. Noble appealed to the Court of Appeals which af-

firmed the decision of the circuit court in regard to residency. Appeal was then taken to the Supreme Court and on October 30, 1984, after accelerated briefing by both sides, Justice Roy Vance issued an opinion and order permitting the election to proceed with both names on the ballot but reserving the final determination to the full Court.

This Court reverses the decision of the Court of Appeals because the Franklin Circuit Court did not have jurisdiction to consider this pre-election suit. KRS 118.176 applies to non-partisan judicial elections and it requires that a challenge to the qualifications of a judicial candidate must be brought in the county or counties which comprise the judicial district.

I

Meagher argues that KRS Chapter 118A governs judicial elections and that KRS 118A.010(6) prevents KRS 118.176 from applying to judicial candidates. We do not agree. In 1984, the General Assembly amended and re-codified KRS 118.176 to extend the coverage of the statute to include any candidate seeking nomination or election in a primary or general election. We interpret the amendment to apply to candidates for judicial office. Previously, the statute had applied only to a challenge of any candidate seeking a partisan nomination or election as an independent. The 1984 amendment was passed as emergency legislation because it was thought that there was no method for challenging the qualification of some candidates. Kentucky Acts 1984, Chapter 413, § 3. The amendment was clearly intended to fill that gap. KRS Chapter 118A contains no provision for challenging the qualifications of a judicial candidate and the application of KRS 118.176 is not prohibited by the express wording of KRS 118A.010.

■ It is the holding of this Court that the only proper procedure for challenging the qualifications of a judicial candidate before the election is the procedure set out in KRS 118.176.

■ Consequently, the proper forum in which to challenge Noble's qualifications would have been the circuit court of a county in which he was alleging residence in order to qualify for the office of district judge.

Section 153 of the Kentucky Constitution provides that the General Assembly shall have exclusive power over elections. Section 117 states that judges shall be elected from their respective districts or circuits on a non-partisan basis as provided by law. The legislature has enacted a general law specifically dealing with challenges to a candidate. KRS 118.176 is the statutory remedy for challenges to the qualification of a candidate. The courts of this Commonwealth have long recognized that the judicial branch has no inherent power to pass on the validity of elections or the eligibility of candidates, but only has such power as given by the General Assembly or possessed at common law through a quo warranto proceeding. *See Craft v. Davidson,* 189 Ky. 378, 224 S.W. 1082 (1920); *Ratleff v. Tackett,* 209 Ky. 588, 273 S.W. 441 (1925); *Wilson v. Tye,* 122 Ky. 508, 92 S.W. 295 (1906); *Nichols v. Pennington,* Ky., 118 S.W. 382 (1909); *Francis v. Sturgill,* 163 Ky. 650, 174 S.W. 753 (1915).

■ The statutes must be strictly complied with because compliance with certain statutory steps are jurisdictional requirements. *See Brock v. Saylor,* 300 Ky. 471, 189 S.W.2d 688 (1945); *Ritchie v. Mann,* Ky., 500 S.W.2d 62 (1973). Where a statute fixes the forum in which these statutory proceedings may be brought, only such fora have jurisdiction to hear and dispose of the matter. *See Gallagher v. Campbell,* 267 Ky. 370, 102 S.W.2d 340 (1937).

■ All election disputes involve the application of particular statutes. It is a well established rule that the statutes must be strictly construed. For application of this principle involving election contests, *see Dodge v. Johnson,* 210 Ky. 843, 276 S.W. 984 (1925) and *Prewitt v. Caudill,* 250 Ky. 698, 63 S.W.2d 954 (1933). It is important to distinguish between an election contest and a pre-election lawsuit. The only pre-

election suit that can be brought is by a voter prior to the primary election. *Fletcher v. Wilson*, Ky., 495 S.W. 787; *Wells v. Lewis*, 300 Ky. 675, 190 S.W.2d 28 (1945). This action is technically not an election contest.

*Dempsey v. Stovall*, Ky., 418 S.W.2d 419 (1967), is not applicable in this situation because the jurisdiction of the Franklin Circuit Court to hear that case was never raised or considered, nor apparently did the statutes involved specify where such action should be brought.

The General Assembly has provided the procedure for challenging the eligibility and qualifications of a candidate in KRS 118.176 effective April 11, 1984. This recodification of the law in 1984 did not alter the application of prior case law or the purpose of the legislation.

As a result of the judicial constitutional amendment adopted in 1975 by the people of this Commonwealth, our present judicial branch was organized. Responding to the electoral mandate, the General Assembly in 1976 enacted various items of legislation including KRS Chapter 118A regarding the election of judges.

KRS 118A.010(6) provides that no provision of Chapter 118 existing on March 10, 1976, except KRS 118.015 through .045 shall apply to judicial elections. All other provisions of the election laws not inconsistent with this Chapter shall be applicable.

■ KRS 118.176 was not specifically repealed and was relied upon in cases discussed herein after 1976. As stated earlier, in 1984, the General Assembly believed it had left a gap in its 1976 program and adopted a new provision as an emergency legislation to be effective April 11, 1984, and closed an apparent gap in the law so as to provide the exclusive remedy for challenges to judicial elections. The law does not provide any opportunity to name the Board of Elections or the Secretary of State so as to create jurisdiction in the Franklin Circuit Court. The forum and the procedures have been precisely stated by the General Assembly, and the courts of this Commonwealth have been consistent in holding that such a procedure is the exclusive remedy. *See Wooton v. Smith*, Ky., 155 S.W.2d 466 (1941); *Thomas v. Lyons*, Ky., 586 S.W.2d 711 (1979).

■ This Court in *Fletcher v. Wilson*, Ky., 495 S.W.2d 787 (1973) and *Fletcher v. Teater*, Ky., 503 S.W.2d 732 (1974), decided that the question of the qualifications of a candidate to appear on the ballot should be challenged before the primary election, not afterwards. Meagher was aware of the questions concerning Noble's residence before the primary. She testified that she had considered a lawsuit for sometime, but the filing of such an action was not her highest priority. She also testified that she believed that if she came in third in the primary, there would be no reason to file a lawsuit. Additional Kentucky cases on this subject may be found in *Burkhart v. Blanton*, Ky.App., 635 S.W.2d 328 (1982), involving a challenge to a school board candidate; *Dickey v. Bagby*, Ky.App., 574 S.W.2d 922, 923 (1978), involving the residency issue raised before the primary in a city election; *Hall v. Miller*, Ky.App., 584 S.W.2d 51 (1979), regarding the election of a mayor in a non-partisan contest.

■ A number of older cases deal with whether it is the right of a voter or an opposing candidate to institute a pre-primary challenge. The present wording of KRS 118.176 gives that right to either person. The procedures and the policies are unchanged. The challenge to a candidate's right to appear on a ballot must be lodged before the primary. Consequently, we must disagree with the opinion of the Court of Appeals that there are no time limits in making such a challenge in a proper forum. The challenge to the qualifications under KRS 118.176 before a general election is permitted only in cases in which there was no primary. *See Stewart v. Burks*, Ky., 384 S.W.2d 316 (1964), and *Burke v. Stephenson*, Ky., 305 S.W.2d 926 (1957).

## II

Although the Court of Appeals determined that KRS 118.176 applied to challenge the qualifications of a judicial candidate, it found that the strict application of the statute would result in an injustice affecting the credibility of the judicial system. It then proceeded to affirm the decision of the circuit court on the alleged merits of the dispute. We cannot agree that the circuit court was correct in applying KRS 116.035(1) as the correct guide to determine residency.

The proper statutory standard to determine the residence of a non-partisan judicial candidate is set out in KRS 118.015(7), which states that the word "residence" used in reference to a candidate shall mean actual residence of the candidate without regard to the residence of the spouse of the candidate. Here the trial court found against a background of divergent testimony that candidate Noble's residency was outside the district. The trial court used the wrong residency statute as a measure. The judgment would be erroneous as a matter of law in that regard.

A careful examination of the record, which includes more than seven hours of testimony from 38 witnesses, indicates that much of Meagher's evidence was in regard to the residence of Noble's wife, including her deed, voter registration and household utilities. Noble, for his part, presented evidence of his own intent to remain in Breathitt County, his motor vehicle and drivers' license there, his taxes and utilities, as well as his living accommodations in Jackson. The principal focus must be on the residence of the candidate as distinguished from the location of his family.

It should be noted that the inclusion of the Secretary of State does not elevate this suit so as to permit jurisdiction in the Franklin Circuit Court. The Secretary of State was performing only a ministerial action in regard to certifying candidates for the ballot, and he had no interest in the suit other than proceeding under the laws as ordered by the courts.

## III

This Court is not insensitive to or unmindful of the necessity for all elected public officials to be qualified pursuant to law for the positions they fill. It must be noted that Kentucky law provides that Meagher, as a candidate, as well as the Attorney General and the Commonwealth Attorney for the district all have standing to bring an ouster action under the usurpation statutes, KRS 415.030, 415.040, 415.050, if they have legitimate grounds to believe that Noble is holding the office of district judge without the proper qualifications. *See, Wells, supra,* and *Friley v. Becker,* 300 Ky. 749, 190 S.W.2d 355 (1945).

## IV

It is the holding of this Court that KRS 118.176 applies to non-partisan judicial races. It is our further holding that challenges to the qualifications of candidates to appear on the ballot must be made before the primary election. The proper place to challenge Noble's qualifications would have been the circuit court of the county in which he was alleging residence in order to qualify for judicial office.

The decision of the Court of Appeals is reversed and the order of the Franklin Circuit Court is vacated.

AKER, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which GANT and LEIBSON, JJ., join.

STEPHENS, Chief Justice, dissenting.

I respectfully disagree. The majority opinion erroneously interprets KRS 118.176 and misconstrues its application to the facts of this case with the result that a vital constitutional mandate, that of residency, is ignored, permitting the movant James Noble to hold the position of District Judge in a jurisdiction in which he does not reside.

Our analysis begins with the basic premise that Noble is not a resident of the Thirty-ninth Judicial District. The trial court, as a fact finder so rules. The majority declares that the circuit court was erroneous as a matter of law by relying on KRS 116.035(1) to regard Noble's spousal residence in finding that Noble failed to meet his residency requirements, whereas it should have instead used KRS 118.015(7) and focused on the candidate's "actual residence." What the majority fails to note is that, even if the lower court had applied the "correct" standard of KRS 118, it still could not have found Noble to be a resident of his district.

In a careful consideration of all the testimony presented at trial, it is quite obvious that the "actual residence" of Noble is in Winchester, where not only his entire family resides but wherein several key witnesses, including two judges, testified that Noble said he resided, and where other witnesses observed him residing. To assume any trial court could have found Noble was a resident of Breathitt County on mere testimony that he "lived in his law offices" with a refrigerator, hot plate, and sofa bed, is beyond belief.

The majority's first and principal reason to allow Noble to remain in office despite his residency, is that the Franklin Circuit Court lacked jurisdiction by failing to meet the herein requirements of KRS 118.176. No authority, however, says that KRS 118.-176 is applicable to judicial candidates, and such a conclusion by the majority is completely contrary to the legislative history of that statute and all other judicial election laws.

Our state judiciary is a very special creature in that our Constitution declares all judges members of the same Court of Justice. No provision of the Constitution implies that any judge's *powers* or *authority* are limited to the district in which he or she is elected and thus it has been said that judges have "equal capacity to act throughout the Commonwealth ..." *Richmond v. Commonwealth*, Ky., 637 S.W.2d 642 (1982). Judicial elections have been distinguished from other types of elections in our statutes and accordingly KRS 118A has been the exclusive Chapter governing judicial elections since the Court of Justice became a statewide office in 1976. The Chapter contains a pointed preclusion of the application of certain other election statutes, specifically KRS 118.176, to judicial elections. Thus, when the legislature modified KRS 118.176, a general election statute, to eliminate references to "party" elections, one can hardly assume that it meant to override the KRS 118A preclusions, and that judicial elections would now fall under its mandates. If the legislature had intended such a drastic reversal in statutory application, an express repeal would certainly have been in order. It is certainly farfetched to conclude, as did the majority, that the change was intended to close a "gap in the law so as to provide the exclusive remedy for challenges to judicial elections" without so much as a simple statement to effectuate such.

Having determined that KRS 118.176 is not applicable here, proper jurisdiction was in Franklin Circuit Court. Since all judges are now state officials, not local, the Secretary of State was the necessary party defendant to whom the Court would direct orders to perform the relief demanded in the complaint. Thus Franklin Circuit Court was the proper place to seek relief for a complaint naming the Secretary of State.

The majority is reluctant to rely solely on the holding that KRS 118.176 precluded jurisdiction and proceeds on several other theories to deny Meagher jurisdiction.

The majority first counters the Court of Appeals' use of *Dempsey v. Stovall*, Ky., 418 S.W.2d 419 (1967) to assume jurisdiction. In my opinion, the authority granted the Court under *Dempsey* is clear. There, as here, the Court, noting the importance of the issue at bar, granted advice to the Secretary of State as a party to the litigation. Thus, even if jurisdiction was improper in the Franklin Circuit Court, the Court of Appeals correctly assumed jurisdiction under *Dempsey*.

The majority next challenges Meagher's lawsuit by asserting that since she sat on her rights, such action not being "her highest priority", she was precluded from filing. It relies on the decisions of *Fletcher v. Wilson*, Ky., 495 S.W.2d 787 (1973) and *Fletcher v. Teater*, Ky., 503 S.W.2d 732 (1974), which hold that the qualifications of a candidate to appear on the ballot should be challenged before the primary election, not afterwards. These decisions dictate an opprobrious burden on candidates and should be overruled. It is judicially legislating to read a time-limit requirement into KRS 118.176 where no such wording exists, and the result is an unconstitutional burden on our election system.

Though the majority claims that Meagher still has a channel for challenging Noble's qualifications through an ouster action under KRS 415.030, 415.040, and 415.-050, such a contest is not available here. What Meagher has challenged are Noble's constitutional qualifications under Sec. 122, not Noble's statutory "bona fides." Such constitutional challenge cannot be taken after the election is held, so the decision here today is binding on that issue.