RENDERED: APRIL 14, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1485-MR

ASHLEY AHRENS                                                                    APPELLANT

v.                        APPEAL FROM OLDHAM CIRCUIT COURT
                          HONORABLE JERRY CROSBY, II, JUDGE
                          ACTION NO. 22-CI-00498

DANIEL FENDLEY; HENRY
COUNTY BOARD OF ELECTIONS;
MICHAEL G. ADAMS, IN HIS
OFFICIAL CAPACITY AS
KENTUCKY SECRETARY OF
STATE; OLDHAM COUNTY BOARD
OF ELECTIONS; KENTUCKY STATE
BOARD OF ELECTIONS; AND
TRIMBLE COUNTY BOARD OF
ELECTIONS                                                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; COMBS AND EASTON, JUDGES.

COMBS, JUDGE:  This appeal comes before the Court from an order entered on December 16, 2022, dismissing a petition under KRS[1] 118.176 filed by Appellant, Ashley Ahrens (Ahrens or Appellant), to disqualify Appellee Daniel Fendley (Fendley or Appellee) as a bona fide candidate in the general election for the office of district judge of the 12th Judicial District, Division 1.  The order of December 16, 2022, also denied Ahrens's petition for a declaration of rights seeking to declare that KRS 118.176 is unconstitutional.  After our review, we affirm.

## I.      BACKGROUND

Appellant, Ashley Ahrens, and Appellee Daniel Fendley ran as opposing candidates for the office of district judge of the 12th Judicial District, Division 1.  Fendley received the most votes in the general election held on November 8, 2022.  He now holds that office.

On October 21, 2022, Ahrens petitioned the Oldham Circuit Court to disqualify Fendley as a bona fide candidate pursuant to KRS 118.176 on the ground that he did not meet the two-year residency requirement set forth in Section 122 of the Kentucky Constitution.[2]  Fendley moved to dismiss the petition as

---

[1] Kentucky Revised Statutes.

[2] Ahrens claims she could not challenge Fendley's bona fide qualifications before the primary as required by KRS 118.176(2) because she did not discover Fendley's qualifications -- or lack thereof -- until after the statute's timeframe had elapsed.

untimely, asserting that KRS 118.176(2) required that Ahrens file her bona fides challenge prior to the May 2022 primary.

On October 26, 2022, Ahrens moved the circuit court to allow amendment of her petition to include a constitutional challenge to KRS 118.176(2), which had been amended in 2021, as well as a petition for a declaration of rights that KRS 118.176 is unconstitutional. Ahrens noticed the motion for hearing on November 4, 2022, four days prior to the general election.

On December 16, 2022, the circuit court denied Ahrens's petition to dismiss Fendley as a candidate for district judge. The circuit court also denied Ahrens's petition for a declaration of rights that KRS 118.176 was unconstitutional.[3] Ahrens asked the circuit court to interpret KRS 118.176 to allow for a challenge to be brought before the general election as opposed to before the primary election, especially when the bona fides being challenged are required to be met by the Kentucky Constitution. According to Ahrens, any other interpretation would allow for an unqualified candidate to be seated as a judge.

The circuit court observed, "this argument has been made as far back as 1985 when the Kentucky Supreme Court mandated that challenges to the bona

---

[3] On December 16, 2022, Ahrens filed a notice of appeal from the order of December 16, 2022, and then she filed a motion to transfer the above-styled appeal to the Kentucky Supreme Court on December 21, 2022. The Kentucky Supreme Court denied her motion to transfer on February 16, 2023.

fides of a judicial candidate needed to be brought prior to the primary election under its interpretation of a prior and similar version of KRS 118.176." Record (R.) at 725-26 (referring to *Noble v. Meagher*, 686 S.W.2d 458 (Ky. 1985)). The circuit court then extensively quoted this Court's recent decisions regarding untimely bona fides challenges, *Witten v. Foster*, No. 2022-CA-1238-EL (Oct. 28, 2022) (order granting motion to set aside) and *Fightmaster v. Johnson*, No. 2022-CA-1131-EL (Oct. 17, 2022) (order denying motion to set aside). R. at 726-27. The circuit court ultimately determined as follows:

> As noted by the higher courts, the legislature could have declined to place a deadline for the challenge of the bona fides but instead chose to insert it into the revised statute. Both the legislative intent and plain language of KRS 118.176(2) mandate that a challenge to the bona fides of a judicial candidate must be filed before the primary election. Therefore, [Ahrens's] petition is not timely and her claim to disqualify Fendley as a candidate for the judicial position due to residency must fail.

R. at 729.

Ahrens then asked the circuit court to hold that KRS 118.176 is unconstitutional on the grounds that it violates the equal protection guarantees of both the state and federal constitutions because it creates unequal and irrational classifications of groups by fixing two different filing deadlines. The circuit court ruled that "the Commonwealth has made clear there exists a strong public policy 'in favor of broad voter participation' in elections, thus requiring any doubt in

-4-

statutory interpretation to 'be resolved in favor of allowing the candidacy to continue.'" R. at 732-33 (quoting *Heleringer v. Brown*, 104 S.W.3d 397, 403 (Ky. 2003)). The court reasoned:

> To allow two candidates to advance past primary only to have one deemed ineligible at the last moment due to a technical challenge subverts a voter's freedom of choice and increases the risk of gamesmanship on behalf of candidates. This reason alone is a rational basis for the requirement that challenges made to the bona fides of a judicial candidate must be made prior to the primary.

R. at 733.

Ahrens also claimed that KRS 118.176 is unconstitutional because it could allow an unqualified candidate to be elected and serve as a judge or justice simply because the disqualification did not present itself until after the primary, thus violating Section 122 of the Kentucky Constitution. Contrary to Ahrens's assertions, the circuit court ruled that KRS 118.176(2) does not abolish or subvert the constitutionally mandated requirements for a judicial candidate. R. at 735. Rather, it found that KRS 118.176(2) "is merely a procedural mechanism wherein a voter or another candidate may challenge the bona fides of a candidate." R. at 75. The court concluded that the statute "is not in conflict with § 122 because it does not negate the requisites for holding office in this state." *Id.* It then reasoned that "[a]fter Judge-Elect Fendley takes the oath of office, [Ahrens], the Attorney [G]eneral, and the Commonwealth Attorney have the opportunity to bring an

-5-

action under the usurpation statutes if they have a legitimate reason to believe he is holding the office without the proper qualifications." R. at 736.

On appeal, Ahrens presents primarily three arguments. First, she asserts that KRS 118.176 modifies the residency requirement of Section 122 of the Kentucky Constitution. Second, she contends that KRS 118.176 is unconstitutional because it violates Section 3[4] of the Kentucky Constitution, the state equivalent of the federal Equal Protection Clause. Lastly, she argues that KRS 118.176 is permissive rather than mandatory, thus demonstrating that a bona fides challenge against a judicial nominee does not have to be filed before the primary. We will address each of Ahrens's arguments below.

## II. STANDARD OF REVIEW

This appeal comes before the Court upon the circuit court's conclusions of law and interpretation of KRS 118.176. Accordingly, the circuit court's order is subject to *de novo* review. *Hardin v. Montgomery*, 495 S.W.3d 686, 694 (Ky. 2016) (citing *McClendon v. Hodges*, 272 S.W.3d 188, 190 (Ky. 2008)).

---

[4] Kentucky Constitution Section 3 provides in part, "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services[.]"

### III. ANALYSIS

**A. KRS 118.176 and Section 122**

Ahrens asserts that KRS 118.176 as amended in 2021 by House Bill 574 is unconstitutional because it "allowed the Legislature to trump the constitutional residency requirement mandated by KY. CONST. § 122 for judicial candidates by shortening the time for bona fides challenge." Appellant's Brief at 8. She argues that requiring a bona fides challenge to be brought before the primary effectively reduces the two-year residency requirement of Section 122 to one and one-half years.

Section 122 of the Kentucky Constitution requires that "[t]o be eligible to serve as . . . a judge of the . . . District Court a person must . . . have been a resident of this Commonwealth and of the district from which he is elected for two years next preceding his taking office." As we have previously held in *Dusing v. Halloran*, "we hold the language 'eligible to serve' relates to the time a judicial candidate is 'about to hold or assume the office[.]'" *Dusing v. Halloran*, No. 2022-CA-0400-EL, at p. 7 (May 10, 2022) (order granting motion to set aside) (quoting *Kirkpatrick v. Brownfield*, 97 Ky. 558, 564, 31 S.W. 137, 138, 17 Ky. L. Rptr. 376 (1895)). Furthermore, a judicial candidate may only "serve" as a judge once he or she has been elected to office, the election results have been certified, and he or she has been duly sworn in. *See generally* KRS 118A.190; KRS 62.010.

According to our decision in *Dusing*, a judge-elect could possibly satisfy the two-year residency requirement after having been elected but before serving and taking his or her office. If eligibility were required at all stages of the candidacy, the framers of our modern constitution could have selected "words . . . to make the meaning indisputable." *Kirkpatrick*, 97 Ky. at 563, 31 S.W. at 138. Therefore, KRS 118.176 does not effectively reduce the residency requirement of Section 122 because a perceived disqualification could be cured after the election but before taking office.

Ahrens further contends that the 2021 amendment of KRS 118.176 "allows a candidate to conceal their lack of constitutional bona fides until the primary and then be statutorily immune from their constitutional defects since [KRS] 118.176 is the sole avenue of challenging constitutional and statutory bona fides for candidates." Appellant Brief at 9 (citing *Noble*, 686 S.W.2d at 462). This argument, however, is based on the faulty premise that KRS 118.176 is the only mechanism to enforce Section 122.

As the circuit court also noted, in *Noble v. Meagher*, the Kentucky Supreme Court observed as follows:

> Kentucky law provides that [the judicial candidate], as well as the Attorney General and the Commonwealth Attorney for the district all have standing to bring an ouster action under the usurpation statute, KRS

415.030,[5] 415.040,[6] 415.050,[7] if they have legitimate grounds to believe the [judge-elect] is holding the office of district judge without the proper qualifications.

686 S.W.2d at 462. Thus, KRS 118.176 is not the only mechanism to enforce the constitutional qualifications of Section 122. Contrary to Ahrens's assertions, if a candidate is elected but unqualified to hold public office, that individual can be removed from office through an ouster action. *See* KRS 415.030. In other words, if a candidate is "ineligible to hold an office, he becomes, when inducted into it, a usurper, and the law provides a distinct and exclusive remedy for his removal, which must be pursued." *Leigh v. Commonwealth*, 203 Ky. 752, 755, 263 S.W. 14, 15 (1924).

Moreover, "[v]otes cast for the unqualified candidate lack the import of those cast for a qualified candidate, as each vote could under no circumstances result in the placement of the candidate in the desired office." *Stephenson v. Woodward*, 182 S.W.3d 162, 174 (Ky. 2005), *as modified* (Jan. 19, 2006). "When a candidate who is constitutionally unqualified to take office nonetheless presents

---

[5] KRS 415.030 provides, "If a person usurp[s] an office or franchise, the person entitled thereto, or the Commonwealth, may prevent the usurpation by an ordinary action."

[6] KRS 415.040 provides, "It shall be the duty of the several Commonwealth attorneys to institute the actions mentioned in this chapter against usurpers of county offices or franchises, if no other person be entitled thereto, or if the person entitled fail to institute the same during three (3) months after the usurpation."

[7] KRS 415.050 provides, "For usurpation of other than county offices or franchises, the action by the Commonwealth shall be instituted and prosecuted by the Attorney General."

him or herself as a qualified candidate eligible for election and office, that candidate has not only misled the electorate but also engaged it in a futile endeavor." *Id.* Therefore, if it should be determined through an ouster action that Fendley was not a resident for two years of the district to which he was elected before taking office, then the votes cast for him during the 2022 general election would have no significance. A constitutionally unqualified candidate cannot serve in an elected office to which he or she has no entitlement. Accordingly, we reject Ahrens's argument that the General Assembly's 2021 amendment of KRS 118.176 somehow modifies the mandates of Section 122.

**B. KRS 118.176 Mandates that a Bona Fides Challenge Against a Judicial Nominee Be Filed Before a Primary**

Next, Ahrens argues that KRS 118.176 is permissive rather than mandatory because the Kentucky General Assembly used "may" instead of "must" or "shall" when drafting the statute. Appellant's Brief at 15. KRS 118.176(2) provides, "An action regarding the bona fides of the nominee of a political party or a nonpartisan or judicial nominee may be commenced at any time prior to the primary." The language "*may be commenced at any time prior to the primary*" was added by the General Assembly as part of statutory revisions effective June 29, 2021. *See* Ky. Acts ch. 197 (H.B. 574) (2021). The prior version of KRS 118.176(2), enacted in 2010, read, "An action regarding the bona fides of any candidate seeking nomination or election in a primary, special, or regular election

may be commenced at any time prior to the regular election." *See* Ky. Acts ch.
123 (H.B. 97) (2010).

"When a statute is amended, the presumption is that the legislature
intended to change the law." *City of Somerset v. Bell*, 156 S.W.3d 321, 326 (Ky.
App. 2005). In other words,

> [w]here a statute is amended or re-enacted in different
> language, it will not be presumed that the difference
> between the two statutes was due to oversight or
> inadvertence on the part of the Legislature. On the
> contrary, it will be presumed that the language was
> intentionally changed for the purpose of effecting
> a change in the law itself.

*Id*. (quoting *Eversole v. Eversole*, 169 Ky. 793, 797, 185 S.W. 487, 489 (1916)).
Furthermore, we follow the directive of KRS 446.080(4): "All words and phrases
shall be construed according to the common and approved usage of language[.]"
KRS 118.176, therefore, evinces an intent by the General Assembly to change the
deadline for filing actions to challenge the qualifications of certain candidates from
"prior to the regular election" to "prior to the primary."

Both the former and current versions of KRS 118.176 utilize the term
"may," which is unextraordinary as actions challenging a candidate's bona fides
are never mandated. But in the event of a challenge, we conclude that with the
2021 amendments to the 2010 statute, the General Assembly changed the
applicable deadline from "prior to the regular election" to "prior to the primary"

-11-

for challenges involving a nominee of a political party, a nonpartisan nominee, or a judicial nominee.[8]

## C. KRS 118.176 Does Not Violate Kentucky's Equal Protection Clause

Lastly, Ahrens argues that KRS 118.176 is unconstitutional because it violates Section 3, which is our state's equivalent to the Equal Protection Clause in the United States Constitution. Specifically, Ahrens claims that KRS 118.176 creates:

> two distinct classes of bona fides challenges: one class which pertains to primaries and includes all political party and non-partisan nominees (including judicial nominees), and a second class which pertains to all special and regular elections but only includes partisan and independent nominees.

Appellant's Brief at 13. These two "distinct classes of bona fides challenges" do not involve similarly situated individuals, however.

---

[8] Ahrens also argues that KRS 118.176 creates a legal impossibility because it requires a bona fides challenge against a "nominee" to be made before the primary even though a candidate does not become a nominee until after a primary. *See* KRS 118A.060(9). Ahrens's argument overlooks KRS 446.080(1), which mandates that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" Thus, in interpreting KRS 118.176, we must construe the statute as a whole so that all its provisions have meaning and harmonize with related statutes. *Jefferson Cnty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718-19 (Ky. 2012) (quoting *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)). We also presume that the General Assembly did not intend for an absurd or unconstitutional result. *Id.* KRS 118.176 overall refers to the bona fides of a candidate who seeks nomination in a primary or election. Although the provisions of KRS 118.176 could have been more carefully worded, Ahrens's proposed interpretation would truly lead to an absurd and obviously unintended result.

"[I]n order to determine whether a person is being denied equal protection of the laws it is necessary to make a comparison between two people or classes of people in relation to their respective enjoyment of the same privilege or protection." *Thomas v. Lyons*, 586 S.W.2d 711, 713 (Ky. 1979); *see also Vision Mining, Inc. v. Gardner*, 364 S.W.3d 455, 474 (Ky. 2011) ("In considering an equal protection challenge, a court . . . must examine whether similarly situated individuals have been treated differently in that instance[.]"). Our Supreme Court previously determined:

> Persons desiring to run in a regular election as independent candidates against assorted party-nominated and other candidates are not "similarly situated" with persons seeking nomination in a nonpartisan primary election, nor are candidates for judicial office, who must, of course, meet certain qualifications beyond mere residence and supporting signatures.

*Lyons*, 586 S.W.2d at 713. We agree.

Ahrens does not complain that KRS 118.176 treats judicial nominees differently. Rather, she complains that KRS 118.176 treats judicial nominees differently from members of a political organization, political group, or independents running in general elections. She claims that the two classes share the same commonality of having to be a resident of the district in which they would serve.

However, a judicial nominee and a member of a political party do not enjoy the same privileges. They run for entirely different offices and require different support. Consequently, KRS 118.176 does not violate Section 3. And even if the enumerated groups within KRS 118.176 could be deemed to be similarly situated, the different timing requirements of KRS 118.176 do not violate Kentucky's equal protection guarantee.

"Governmental classifications that do not target suspect classes or groups or fundamental interests are subject only to rational basis review." *Commonwealth ex rel. Stumbo v. Crutchfield*, 157 S.W.3d 621, 624 (Ky. 2005). Here, the challenged statute does not affect a suspect class such as race, national origin, or alienage. Additionally, it does not inflict injury to Ahrens's right to candidacy because no such constitutional status exists. *Mobley v. Armstrong*, 978 S.W.2d 307, 309 (Ky. 1998), *as modified* (Oct. 22, 1998) ("The right to candidacy is not a fundamental right."); *Chapman v. Gorman*, 839 S.W.2d 232, 237-38 (Ky. 1992) ("The federal circuit courts of appeal, under Equal Protection Clause analysis, sometimes within the context of First Amendment challenges, as the trial court observed, have adhered to *Bullock v. Carter*, [405 U.S. 134, 143, 92 S. Ct. 849, 855, 31 L. Ed. 2d 92 (1972)], in holding that there is no fundamental right to candidacy."). Therefore, the rational basis test rather than strict scrutiny is the appropriate constitutional standard to analyze KRS 118.176.

"A person challenging a law upon equal protection grounds under the rational basis test has a very difficult task because a law must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Crutchfield*, 157 S.W.3d at 624. "Our General Assembly, under the Equal Protection Clause, has great latitude to enact legislation that may appear to affect similarly situated people differently." *Id.* Moreover, Section 153 of the Kentucky Constitution vests the exclusive power to regulate elections to the Kentucky General Assembly. KY. CONST. § 153 ("[T]he General Assembly shall have power to provide by general law for the manner of voting, for ascertaining the result of elections and making due returns thereof, for issuing certificates or commissions to all persons entitled thereto, and for the trial of contested elections.").

As noted by the Kentucky Supreme Court in *Kentucky State Board of Elections v. Faulkner*,

> The right to hold a primary election for the nomination of candidates for office, the right of such nominee to have his name appear on the ballot under the device and as the candidate of his party, the right of an opposing candidate to the one declared to be successful by the boards of election commissioners empowered to compare the returns of the primary election and to grant certificates of nomination to contest such nomination, are **all creatures of the statute enacted by the Legislature upon that subject**.

591 S.W.3d 398, 407 (Ky. 2019) (quoting *Brumleve v. Cronan*, 176 Ky. 818, 197 S.W. 498, 501 (1917) (emphasis added)). Accordingly, KRS 118.176 comes to us bearing a strong presumption of validity. *United Dry Forces v. Lewis*, 619 S.W.2d 489, 493 (Ky. 1981) ("We are well aware of the strong presumption of the constitutionality of enactments of the general assembly[.]").

Although "[t]he laws that affect candidates always have at least some effect on voters[,]" *Mobley*, 978 S.W.2d at 309, "[n]ot all restrictions placed on a candidate's eligibility impose suspect burdens on fundamental rights of voters to associate and to choose among candidates." *Chapman*, 839 S.W.2d at 238. We further note that "[g]enerally, evenhanded restrictions on candidate eligibility that serve legitimate state goals, unrelated to First Amendment values, are upheld." *Id.*

The jurisdictional filing time requirements found within KRS 118.176(2) further a legitimate state interest. The circuit court determined that the Commonwealth "has made clear there exists a strong public policy 'in favor of broad voter participation' in elections, thus requiring any doubt in statutory interpretation to 'be resolved in favor of allowing the candidacy to continue.'" R. at 732-33. It further found that the filing time requirements of KRS 118.176 satisfy a rational basis because they prevent the subversion of a voter's freedom of choice and decrease the risk or opportunity for gamesmanship on behalf of candidates. R. at 733.

This Court's predecessor has previously recognized this same principle. In *Fletcher v. Teater*, the Court advocated that "the voting public ought not to be duped or confused by the appearance on the ballot of the name of a person who has no right for it to be there[.]" 503 S.W.2d 732, 733-34 (Ky. 1974). As stated in *Heleringer v. Brown*, "[t]he right of the qualified voter to cast an **effective** vote is among our most precious freedoms." 104 S.W.3d at 405 (Stumbo, J., concurring) (emphasis added).

For the foregoing reasons, we affirm the circuit court's order of December 16, 2022, entered by the Oldham Circuit Court, dismissing Ahrens's petition to disqualify Fendley as a judicial candidate and finding that KRS 118.176 is constitutional. Furthermore, we have considered the breadth of Ahrens's remaining arguments and find them without merit or unnecessary to the resolution of the issues before the Court.

ALL CONCUR.

BRIEFS FOR APPELLANT
ASHLEY AHRENS:

J. Gregory Troutman
Louisville, Kentucky

Jonathan Wells
Ben Wyman
La Grange, Kentucky

Galen L. Clark
Louisville, Kentucky

Michele McKinney
Louisville, Kentucky

BRIEF FOR APPELLEE
DANIEL FENDLEY:

Sarah D. Reddick
Chase M. Cunningham
Louisville, Kentucky